**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Haney,<br><br>            Plaintiff,<br><br>v.<br><br>ACE American Insurance Company, et al.,<br><br>            Defendants. | No. CV-13-02429-PHX-DGC<br><br>**ORDER** |

Plaintiff Jane Haney has moved for summary judgment on her claim that Defendant ACE American Insurance Company breached its duty of good faith and fair dealing. Doc. 65. The motion is fully briefed. Docs. 65, 80, 96.[1] The Court will grant Plaintiff's motion.

**I.   Background.**

On March 13, 2012, Plaintiff Jane Haney fell on a cement surface and injured her head and knee. Doc. 66-1. At the time, she worked for the Boeing Company. *Id.* Boeing had contracted with Defendant ACE American Insurance Company ("ACE") to insure Boeing's employees for workers' compensation. Doc. 66, ¶ 6; Doc. 81, ¶ 6. Boeing had also contracted with Defendant Sedgwick Claims Management Services ("Sedgwick") to adjust the claims of employees who suffered injuries while working for

---

[1] Defendant's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Boeing.  Doc. 66, ¶ 7; Doc. 81, ¶ 7.

Due to her injuries, Haney did not return to work for the next two years.  Doc. 66-1, ¶ 2.  Haney's worker compensation coverage, administered by ACE and Sedgwick, covered her medical expenses and provided wage replacement benefits.  Doc. 97, ¶¶ 10-12.  Sedgwick assigned Defendant Lori Hasty to manage Haney's worker compensation claims.  Doc. 66, ¶ 8; Doc. 81, ¶ 8.  When calculating Haney's wage replacement benefits, Hasty erred in two ways.  First, she based Haney's wage benefits on Haney's annual salary, as opposed to the income Haney received in the thirty days preceding her injury.  Doc. 66, ¶ 15; Doc. 81, ¶ 15; *see* Doc. 66-6 at 7.[2]  Second, Hasty miscalculated Haney's annual salary as $14,925.57.  Doc. 66, ¶ 14; Doc. 81, ¶ 14.  This was the amount Haney earned in the first few months of 2012, not the amount she earned over the previous twelve months.  *See* Doc. 66-6.

Because of Hasty's miscalculations, Haney received $1,247.19 in monthly wage replacement benefits instead of the statutory maximum of $4,062.29.  Doc. 97, ¶ 13.  This resulted in a deficiency of over $20,000 in benefits until the miscalculation was corrected.  *Id.*, ¶¶ 60-61.  Hasty later described her miscalculation as an "honest mistake."  Doc. 66-16 at 28.

In July of 2012, Haney hired Fendon Law Firm because she believed that she was not receiving her full workers' compensation benefits.  Doc. 81-1 at 18.  On September 5, 2012, Haney filed a notice of her injury with the Industrial Commission of Arizona ("ICA").  Doc. 81-3 at 27.  On September 14, Defendant Hasty responded by filing a notice of Haney's claim status with ICA.  Doc. 66-7.[3]  Hasty's notice included the

---

[2] For workers' compensation benefits, "Arizona courts have held that a worker's average monthly wage is presumed to be the income earned during the 30 days prior to the injury."  *Berryhill v. Indus. Comm'n*, 307 P.3d 1030, 1033 (Ariz. Ct. App. 2013) (citing A.R.S. § 23-1041).

[3] This was the first notice of Haney's claim status that ICA received from Hasty, although Hasty had previously reported that she had filed a notice of claim status on March 28.  Doc. 66-4 at 2.  The evidence, however, is unclear whether Hasty intentionally lied about filing a notice in March or simply made a mistake in her reporting.  *See* Doc. 66-4; Doc. 66-16 at 21-23; Doc. 66-17 at 3-8.

- 2 -

miscalculated amount of Haney's monthly wage benefits and incorrectly stated that Haney's income for the thirty days preceding her injury was $1,185.18. *Id.* On September 28, ICA "independently determined" Haney's average monthly wage to be $1,247, the same amount Hasty had calculated. Doc. 81-3 at 37. ICA's findings were mailed to Haney, but she claims she never received them. Doc. 66-1, ¶ 3; Doc. 66-5, ¶ 2.

Although Haney had been receiving improperly calculated wage benefits for months, the Fendon Law Firm did not raise this issue with Defendants until February of 2013. *See* Doc. 66-19. On February 14, 2013, a bookkeeper for Fendon sent Hasty an e-mail stating that Haney's average monthly wage should be raised to the limit of $4,062.29 and requesting "a retro check . . . to get her caught up." Doc. 66-20 at 6. On March 13, 2013, Haney's compensation benefits were corrected and Haney began to receive $4,062.29 a month. Doc. 66-1, ¶ 6; Doc. 66-5 at 4. Defendants still did not issue a check for the previous underpayments.

On March 20, 2013, Fendon requested a hearing with ICA regarding Haney's underpaid benefits. Doc. 66-5. Defendants were notified about the hearing, but did not attend. *Id.* On July 31, 2013, ICA found that Haney's average monthly wage should be set to the statutory maximum of $4,062.29 and ordered Defendants "to pay applicant the difference between what applicant should have been receiving based on that maximum wage amount and what the carrier incorrectly paid based on lower wage figures from the date of injury through March 13, 2013." Doc. 66-5 at 5. Defendants received a copy of ICA's order. Doc. 66, ¶ 57; Doc. 81, ¶ 57.

In September of 2013, Fendon sent Hasty two separate e-mails requesting payment of $23,549.31, the amount Fendon believed was owed to Haney due to previous mispayments. Doc. 66, ¶¶ 57-62; Doc. 81, ¶¶ 57-62. Hasty received and read these e-mails, but did not respond. *Id.* On October 22, ICA ordered Defendants to "address why you have not paid the benefits which were ordered to be paid." Doc. 66-14. On November 20, Defendants sent Haney checks totaling $23,549.31 (Doc. 97, ¶¶ 60-61),[4] a

---

[4] Fendon and Defendants initially disagreed about the amount owing to Haney.

day before ICA sent Defendants a "Notice of Alleged Bad Faith and/or Unfair Claim Processing Practices" (Doc. 66-26). ICA subsequently withdrew its notice of alleged bad faith. Doc. 66-26.

On November 26, 2013, Haney filed this lawsuit. Doc. 1. Haney claims that Defendant ACE breached its duty of good faith and fair dealing, and that Defendants Sedgwick and Hasty aided and abetted ACE in this breach. *Id.* Haney also claims that Defendants intentionally inflicted emotional distress. *Id.* The Court granted Defendants' motion to dismiss Haney's claim for intentional infliction of emotional distress. Doc. 27. Haney has now moved for partial summary judgment on its claim that ACE breached its duty of good faith and fair dealing. Doc. 65.

## II. Legal Standards.

### A. Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

Doc. 97, 60-61. Despite this disagreement, an employee of Sedgwick agreed to pay the requested amount of $23,549.31. *Id.*

- 4 -

**B.     Duty of Good Faith & Fair Dealing.**

The court in *Demetrulias v. Wal-Mart Stores Inc.*, 917 F. Supp. 2d 993, 1004-05 (D. Ariz. 2013), explained the duty of good faith and fair dealing under Arizona law, and what follows is quoted from that opinion: Under Arizona law, a workers compensation claimant can bring an action against her employer's workers compensation insurer for breach of the duty of good faith and fair dealing. *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 298 (Ariz. Ct. App. 2009). The duty arises because "[a]n insurance contract is not an ordinary commercial bargain; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000) (internal quotation marks omitted). An insurance relationship carries duties that include "[e]qual consideration, fairness and honesty." *Rawlings v. Apodaca*, 726 P.2d 565, 571 (Ariz. 1986). "[A]n insurer that intentionally and unreasonably denies or delays payment breaches the covenant of good faith owed to its insured." *Id.* at 565. While a typical bad faith situation involves denial of benefits or coverage, *see Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1269 (Ariz. 1992), the Arizona Supreme Court has affirmed that delays in approval and actions taken while processing a claim can support a bad faith action. *See Zilisch*, 995 P.2d at 279 (duty breached when insurer "intentionally denies, fails to process or pay a claim without a reasonable basis"); *Deese*, 838 P.2d at 1270.

To aid in analyzing a bad faith insurance claim, Arizona employs a two-pronged test that has an objective and subjective component. First is the objective inquiry: did the insurer act unreasonably toward the insured? *Clearwater v. State Farm Mut. Auto. Ins. Co.*, 792 P.2d 719, 723 (Ariz. 1990). Second is the subjective: did the insurer act "knowingly or with reckless disregard as to the reasonableness of its actions?" *Id.*

Unreasonable actions include failure to "immediately conduct an adequate investigation," failure to "act promptly in paying a legitimate claim," "forc[ing] an insured to go through needless adversarial hoops to achieve its rights under the policy," "lowball[ing] claims," and similar conduct. *Zilisch,* 995 P.2d at 280. The nature of the

insurance relationship under Arizona law requires insurers to give "equal consideration" to the needs of their insureds and not treat the claims process as a battlefield. *Id.* Insurers can challenge claims that are "fairly debatable." *Id.* at 279.

As far as the subjective question of the insurer's intent goes, "[t]he 'intent' required here is an 'evil hand' – the intent to do the act. . . . [T]he insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds. But an 'evil mind' is not required; the insurer need not intend to harm the insured." *Rawlings,* 726 P.2d at 576. Intent is established if the insurer lacked a "founded belief" that its conduct was permissible. *Id.* "The founded belief is absent when the insurer either knows that its position is groundless or when it fails to undertake an investigation adequate to determine whether its position is tenable." *Id.* That means a bad faith plaintiff has to show something more than negligence to prevail. *Id.; see also Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1339 (Ariz. Ct. App. 1995) ("Mere mistake and inadvertence are not sufficient to establish a claim for bad faith.").

**III. Analysis.**

Haney argues that ACE breached its duty of good faith and fair dealing when: (1) Hasty miscalculated the amount of wage replacement benefits owing to Haney, and (2) Hasty failed to make retroactive payments to Haney that would compensate Haney for the initial miscalculation, even though Hasty was repeatedly notified of this issue over a period of ten months. Doc. 65 at 14-21.

**A.    The Miscalculation of Benefits.**

Haney argues that Hasty's miscalculation was objectively unreasonable and represented a failure to undertake an adequate investigation. Doc. 65 at 12-14. Haney points to three instances in which Hasty failed to undertake an adequate investigation: (1) Hasty's initial conclusion that Haney's average monthly wage was $1,243.70, when her earning statements (Doc. 66-6) showed that her income for the month preceding the injury was $6,185.18; (2) Hasty's failure to submit forms to ICA thirty days after Haney's injury and her misrepresentation of that fact; and (3) Hasty's miscalculation – on

the forms that were eventually submitted to ICA – of Haney's average monthly wage as $1,243.70 and Haney's income for the month preceding the injury as $1,185.

As discussed above, Haney must show that Hasty's conduct was objectively unreasonable and intentional. Intent may be established if the insurer failed "to undertake an investigation adequate to determine whether its position is tenable." *Rawlings,* 726 P.2d at 576. But "[n]egligent conduct which results solely from honest mistake, oversight, or carelessness does not necessarily create bad faith liability even though it may be objectively unreasonable. Some form of consciously unreasonable conduct is required." *Trus Joist Corp. v. Safeco Ins. Co. of Am.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986) (citing *Rawlings*, 726 P.2d at 577).

A genuine dispute exists as to whether Hasty's miscalculations amounted to a conscious failure to investigate or mere negligence. A reasonable jury could conclude that, as Hasty put it, she simply made an "honest mistake." Doc. 66-16 at 28. First, a reasonable interpretation of Hasty's initial miscalculation of Haney's benefits is that Hasty mistakenly assumed that the number at the end of Haney's earning statement represented her income for the past twelve months (when it represented her income for the first three months of 2012) and incorrectly calculated Haney's benefits based on that number. *See* Doc. 66-6. Whether this represented a conscious failure to investigate is a factual question that cannot be resolved at summary judgment.

Second, even if Hasty was required to submit forms to ICA thirty days after Haney's injury,[5] a jury could reasonably interpret her failure to do so as negligence. Haney argues that Hasty lied to her supervisor when she wrote, in response to the supervisor's question, that the "[ICA] forms were filed on 3/28/2012." Doc. 66-4 at 2. The evidence, however, is unclear whether Hasty intentionally lied or simply made a mistake in her reporting. *See* Doc. 66-4; Doc. 66-16 at 21-23; Doc. 66-17 at 3-8.

---

[5] Haney argues that A.R.S. § 23-1061 requires an insurer to submit Notice of Claim Status forms to ICA thirty days after an insured is injured. Doc. 65 at 17. Defendants argue that the statute requires submission of forms after the insured has filed a claim with ICA. Doc. 80 at 6. The Court finds it unnecessary to decide the issue at this time.

1    Third, a jury could find that Hasty was negligent when she repeated her
2 miscalculations on the forms that she eventually submitted to ICA. When Hasty again
3 listed $1,243.70 as Haney's average monthly wage, a reasonable conclusion is that she
4 mistakenly assumed that her previous calculations were correct. Haney emphasizes that
5 Hasty incorrectly wrote on these forms that Haney's income for the thirty days preceding
6 her injury was $1,185 as opposed to $6,185, but again, this was arguably due to an
7 "honest mistake, oversight, or carelessness." *Trus Joist*¸ 735 P.2d at 134.

8    The Court recognizes that repeated mistakes in handling insurance claims may
9 eventually amount to bad faith. But as the Arizona Supreme Court has found: "Insurance
10 companies . . . are far from perfect. Papers get lost, telephone messages misplaced and
11 claims ignored because paperwork was misfiled or improperly processed. Such isolated
12 mischances may result in a claim being unpaid or delayed. None of these mistakes will
13 ordinarily constitute a breach of the implied covenant of good faith." *Rawlings*, 726 P.2d
14 at 573. Thus, there remains a question of fact as to whether Hasty's actions were
15 intentional or negligent. The Court denies Haney's motion for summary judgment with
16 respect to her claim that ACE breached its duty when Hasty miscalculated Haney's wage
17 benefits and mishandled the forms to be filed with ICA.

18    **B.    Failure to Make Retroactive Payments.**

19    Haney argues that ACE's failure to make retroactive payments to Haney until ten
20 months after being notified of the issue amounts to bad faith. The Court agrees. The
21 undisputed evidence shows that Haney and her representatives repeatedly notified Hasty
22 about the issue of retroactive payments – yet Hasty and Defendants failed to respond for
23 a period of ten months.

24    The first notification came on February 14, 2013, when a bookkeeper for Fendon
25 Law Firm informed Hasty about her miscalculations and requested retroactive payments.
26 Doc. 66-9. There were additional e-mails in March. *See* Docs. 66-10, 66-11. On
27 March 21, 2013, Haney requested a hearing before ICA to settle the problems with her
28 wage replacement benefits. Doc. 66-21. A notice of this hearing was sent to and

received by Sedgwick. *Id.*; Doc. 66-22. On July 31, 2013, ICA ordered Defendants to make retroactive payments. Doc. 66-5. Defendants received a copy of ICA's order. Doc. 66, ¶ 57; Doc. 81, ¶ 57. In September, Fendon sent two e-mails to Hasty requesting the retroactive payments. Docs. 66-12, 66-13. Having still not received the payments, Haney appeared before ICA. On October 22, ICA asked Defendant to "address why you have not paid benefits which were ordered to be paid." Doc. 66-14. On November 18, 2013, when Hasty's supervisors learned of the issue with Haney's benefits, they worked quickly to resolve the problem. Doc. 97, ¶¶ 56-67. Haney finally received her retroactive payments on December 12, 2013, more than ten months after Hasty was first asked to issue a retroactive payment. *See* Doc. 66-9.

Defendants do not argue that there was a question about whether Haney was owed retroactive payments. *See* Doc. 80. Hasty does not deny that she received the e-mails requesting the payments. *See* Doc. 66-16 at 31-32. The record shows that Hasty was aware of the problems when she corrected Haney's compensation benefits on March 13, 2013. *See* Doc. 66-1, ¶ 6; Doc. 66-5 at 4. In her deposition, when asked why she didn't respond to e-mails about the payments, Hasty stated that "the only [reason] would be the workload." Doc. 66-16 at 37.

There is no genuine issue of material fact that Hasty's conduct was unreasonable. For a bad faith claim, unreasonable conduct includes failure to "immediately conduct an adequate investigation," failure to "act promptly in paying a legitimate claim," and "forc[ing] an insured to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch,* 995 P.2d at 280. Hasty's conduct falls within each of these examples. Furthermore, because Defendants have not disputed that Hasty was owed retroactive payments (Doc. 80), this is not a case where an insurance claim was "fairly debatable." *Zilisch,* 995 P.2d at 279.

Nor can there be a genuine issue of material fact as to whether Hasty's conduct was intentional. To be liable for bad faith, a defendant "need not intend to harm the insured." *Rawling*s, 726 P.2d at 576. Rather, intent may be shown if the defendant acted

without a "founded belief." *Id*. A founded belief is absent if the defendant "either knows that its position is groundless or . . . fails to undertake an investigation adequate to determine whether its position is tenable." *Id.* The Court finds that there is no genuine dispute that Hasty knowingly failed to undertake an adequate investigation to determine whether her position was tenable. Despite notification of the issue in February, further e-mails in March, an order from ICA in July, additional e-mails in September, and a second notice from ICA in October, Hasty and Defendants failed to resolve the matter. Defendants do not claim that they failed to receive the e-mails and notifications. *See* Doc. 66 ¶¶ 36-66; Doc. 81, ¶¶ 36-66. Upon receiving the first e-mail regarding the retroactive payments, Hasty had a duty to respond in good faith. By failing to resolve the matter for ten more months, she and Defendants breached that duty.

ACE argues that the "undisputed facts demonstrate that once Ms. Hasty's supervisor became aware of the underpayment, it was corrected." Doc. 80 at 2. ACE also argues that when Hasty's supervisor learned that Hasty was struggling, she reduced Hasty's workload and gave Hasty a written warning. Doc. 80 at 11-13. But the reasonableness of the supervisors' conduct does not absolve ACE of liability. "Under Arizona law, 'an insurer who owes the legally imposed duty of good faith to its insured . . . cannot escape liability for a breach of that duty by delegating it to another, regardless of how the relationship of that third party is characterized.'" *Mendoza*, 213 P.3d at 305 (quoting *Walter v. Simmons*, 818 P.2d 214, 223 (Ariz. Ct. App. 1991)). ACE owed Hasty a duty to handle her claims in good faith. If an employee or delegate of ACE handles a claim in bad faith, ACE is liable. *See also Walter*, 818 P.2d at 223 ("[I]n cases of a non-delegable duty, 'the fact that the one to whom the performance of the duty is delegated acts for his own purposes and with no intent to benefit the principal or master is immaterial.'"). The Court will grant Haney's motion for summary judgment with respect to her claim that ACE breached its duty of good faith when Hasty failed to issue retroactive payments in a timely manner.

1    **IT IS ORDERED** that Plaintiff's motion for partial summary judgment (Doc. 65)
2 is **granted**.
3    Dated this 5th day of January, 2015.

_____
David G. Campbell
United States District Judge