WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Haney,<br><br>    Plaintiff,<br><br>v.<br><br>ACE American Insurance Company, et al.,<br><br>    Defendants. | No. CV-13-02429-PHX-DGC<br><br>**ORDER** |

  On January 5, 2015, the Court granted Plaintiff partial summary judgment on her claim that Defendant ACE American Insurance Company breached its duty of good faith and fair dealing. Doc. 101. Defendants now seek summary judgment on Plaintiff's request for punitive damages. Doc. 102. The Court will deny the motion.[1]

**I. Background.**

  On March 13, 2012, Plaintiff Jane Haney fell on a cement surface and injured her head and knee. Doc. 106-1. At the time, she worked for the Boeing Company. *Id.* Boeing had contracted with Defendant ACE American Insurance Company ("ACE") to insure Boeing's employees for workers' compensation and with Defendant Sedgwick Claims Management Services ("Sedgwick") to manage the claims of employees who suffered injuries while working for Boeing. Doc. 107, ¶¶ 7-8. Due to her injuries, Haney

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

did not return to work for the next two years and received worker's compensation coverage from ACE and Sedgwick. Doc. 106-1, ¶ 2; Doc. 107, ¶¶ 10-12.

Sedgwick had assigned Defendant Lori Hasty to manage Haney's worker compensation claims. *Id.*, ¶ 9. When initially calculating Haney's wage replacement benefits in 2012, Hasty erred in two ways. First, she based Haney's wage benefits on Haney's annual salary, as opposed to the income Haney received in the thirty days preceding her injury. Doc. 107, ¶ 14; *see* Doc. 106-6 at 7.[2] Second, Hasty miscalculated Haney's annual salary as $14,925.57. Doc. 106, ¶ 14; Doc. 111, ¶ 14. This was the amount Haney earned in the first few months of 2012, not the amount she earned over the previous twelve months. *See* Doc. 106-6. Because of Hasty's miscalculations, Haney received $1,247.19 in monthly wage replacement benefits instead of the statutory maximum of $4,062.29 that she should have received. Doc. 107, ¶ 14. This resulted in a deficiency of over $20,000 in benefits until the miscalculation was corrected. *Id.*, ¶¶ 61-62. Hasty later described her miscalculations as an "honest mistake." Doc. 106-16 at 28.

In July of 2012, Haney hired the Fendon Law Firm because she believed that she was not receiving her full workers' compensation benefits. Doc. 103-1 at 13-14.[3] Although Haney had been receiving improperly calculated wage benefits for months, the Fendon Law Firm did not raise this issue with Defendants until February of 2013. *See* Doc. 106-19. On February 14, 2013, a bookkeeper for Fendon sent Hasty an e-mail stating that Haney's average monthly wage should be raised to the limit of $4,062.29 and requesting "a retro check . . . to get her caught up." Doc. 106-20 at 6. On March 13,

---

[2] For workers' compensation benefits, "Arizona courts have held that a worker's average monthly wage is presumed to be the income earned during the 30 days prior to the injury." *Berryhill v. Indus. Comm'n*, 307 P.3d 1030, 1033 (Ariz. Ct. App. 2013) (citing A.R.S. § 23-1041).

[3] On September 5, 2012, Haney also filed a notice of her injury with the Industrial Commission of Arizona ("ICA"). Doc. 81-3 at 27. Defendant Hasty responded by filing a notice of Haney's claim status with ICA. Doc. 106-7. Hasty's notice included the miscalculated amount of Haney's monthly wage benefits and incorrectly stated that Haney's income for the thirty days preceding her injury was $1,185.18. *Id.* ICA "independently determined" Haney's average monthly wage to be $1,247, the same amount Hasty had calculated. Doc. 81-3 at 37. ICA's findings were mailed to Haney, but she claims she never received them. Doc. 106-1, ¶ 3; Doc. 106-5 at 4.

2013, Haney's compensation benefits were corrected and Haney began to receive $4,062.29 a month. Doc. 106-1, ¶ 6; Doc. 107, ¶ 38. But Defendants still did not issue a check for the previous underpayments.

On March 20, 2013, Fendon requested a hearing with ICA regarding Haney's underpaid benefits. Doc. 106-5. Defendants were notified about the hearing, but did not attend. *Id.* On July 31, 2013, ICA found that Haney's average monthly wage should be set to the statutory maximum of $4,062.29 and ordered Defendants to compensate Haney for the payments that had been based on Hasty's original miscalculation. Doc. 106-5 at 5. Defendants received a copy of ICA's order. Doc. 106, ¶ 57; Doc. 111, ¶ 57. In September of 2013, Fendon sent Hasty two separate e-mails requesting payment of $23,549.31, the amount Fendon believed was owed to Haney due to previous underpayments. Doc. 106, ¶¶ 57-62; Doc. 111, ¶¶ 57-62. Hasty received and read these e-mails, but did not respond. *Id.* On October 22, ICA ordered Defendants to "address why you have not paid the benefits which were ordered to be paid." Doc. 66-14. On November 20, after the matter came to the attention of Hasty's supervisors, Defendants sent Haney checks totaling $23,549.31. Doc. 107, ¶¶ 57-63.[4]

Throughout this time-period, Hasty had been struggling with her work. Her supervisor, Kimberly Workman, noted in August of 2012 that Hasty was "extremely" overwhelmed and "frustrated" because she was constantly "behind and putting out fires." Doc. 106-29 at 1. Workman began to regularly meet with Hasty in order to help her with the workload. Doc. 107, ¶¶ 41-44. Due to continued poor performance, however, Workman had to verbally warn Hasty in April of 2013. *Id.*, ¶¶ 39-40; Doc. 103-1 at 51. Hasty still struggled and Workman noted that her work was "significantly behind." Doc. 103-1 at 54. By September of 2013, Workman was beginning to question Hasty's integrity because Hasty often claimed to have completed a task when she had not. Doc. 106-37. For example, Hasty noted that she had filed a document relevant to

---

[4] Fendon and Defendants initially disagreed about the amount owing to Haney. Doc. 107, ¶¶ 61-62. Despite this disagreement, an employee of Sedgwick agreed to pay the requested amount of $23,549.31. *Id.*

Haney's claim in March of 2012, when in fact she did not do so until September of 2012. Doc. 106, ¶¶ 21-25; Doc. 111, ¶¶ 21-25.  Hasty resigned in March of 2014.  Doc. 107, ¶ 50.

On November 26, 2013, Haney filed this lawsuit against ACE, Sedgwick, and Hasty.  Doc. 1.  On Haney's motion for partial summary judgment, the Court found as a matter of law that ACE – through the actions of Hasty – had breached its duty of good faith and fair dealing by failing to make retroactive payments to Haney until ten months after being notified of the issue.  Doc. 101.  The Court stated:

> [T]here is no genuine dispute that Hasty knowingly failed to undertake an adequate investigation to determine whether her position was tenable. Despite notification of the issue in February, further e-mails in March, an order from ICA in July, additional e-mails in September, and a second notice from ICA in October, Hasty and Defendants failed to resolve the matter [of Haney's retroactive payments]. . . .  Upon receiving the first e-mail regarding the retroactive payments, Hasty had a duty to respond in good faith.  By failing to resolve the matter for ten more months, she and Defendants breached that duty.

Doc. 101 at 10.  Defendants have now moved for summary judgment on Plaintiff's request for punitive damages, arguing that they did not engage in the kind of conduct that is necessary for an award of punitive damages.  Doc. 102.

**II.    Legal Standard.**

"Punitive damages may be awarded in a bad faith insurance case." *Filasky v. Preferred Risk Mut. Ins. Co.*, 734 P.2d 76, 83 (Ariz. 1987).  "To obtain an award of punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in 'reprehensible conduct combined with an evil mind over and above that required for commission of a tort.'" *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 454 (Ariz. Ct. App. 2015) (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986)).  In a bad faith insurance case, "[t]he requisite evil mind is found if the insurer intended to injure the insured or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to the insured." *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1080 (Ariz. 1987) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)).

"This standard is satisfied by evidence that [the insurer's] wrongful conduct was motivated by spite, actual malice, or intent to defraud. [The insurer's] conscious and deliberate disregard of the interests and rights of others also will suffice." *Gurule v. Illinois Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987) (citations omitted). But punitive damages "are recoverable in bad faith tort actions when, *and only when,* the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent. Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith but may not rise to the level required by the punitive damage rule. *Rawlings*, 726 P.2d at 578 (emphasis in original) (citations omitted). "[P]unitive damages may be assessed against an insurer for the actions of its [employee] if those actions were taken in furtherance of the insurer's business and within the scope of the [employee's] agency." *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 305 (Ariz. Ct. App. 2009).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Thus, "[i]f a court finds that a reasonable jury could find the requisite evil mind by clear and convincing evidence, then the court must deny a motion for summary judgment on the issue of punitive damages." *Quintero v. Rogers*, 212 P.3d 874, 879 (Ariz. Ct. App. 2009) (quotation marks and citation omitted).

**III. Analysis.**

Defendants argue that there is no evidence that they intentionally withheld benefits from Haney or intentionally harmed her. Rather, the facts show that Hasty was a

- 5 -

struggling employee who made an "honest mistake" and did not desire to harm Haney. Defendants stress that they paid all of the benefits owed to Haney and promptly corrected Hasty's mistakes. In her response, Haney argues that there is a genuine dispute of material fact as to whether (1) Hasty consciously disregarded a substantial risk that her conduct might harm Haney, (2) Hasty intentionally injured Haney by refusing to compensate her for previous miscalculations, and (3) Defendants intentionally overloaded Hasty with work, knowing that this was likely to harm insureds like Haney.

The Court agrees with Haney's first argument, that is, there is a genuine dispute as to whether Lori Hasty consciously disregarded a substantial risk of harm to Haney. The evidence shows that Hasty initially miscalculated the benefits due to Haney; the Fendon firm informed Hasty of this miscalculation in February of 2013; Hasty corrected the miscalculation in March of 2013 for all future, but not past payments; Hasty thus knew that Haney had requested and was owed retroactive payments, but did not pay them; the Fendon firm repeatedly notified Defendants and ICA of this issue; ICA ordered Defendants to compensate Haney for previous underpayments; the Fendon firm sent multiple e-mails to Hasty regarding this issue in September of 2013; Hasty received these e-mails, but did not act; ICA again ordered Defendants to make the retroactive payments; Defendants complied with this order only after the matter came to the attention of Hasty's supervisors in November of 2013.

These facts show that Hasty knew she had made a miscalculation, knew that Haney was owed retroactive payments, knew that Haney's representatives had repeatedly requested these payments, knew that ICA had ordered these payments, and yet did nothing to make the payments for ten months. A reasonable jury could find clear and convincing evidence that Hasty consciously disregarded Haney's right to payment of the underpaid amounts – a "conscious and deliberate disregard of the interests and rights of [Haney]." *Gurule*, 734 P.2d at 87.

The Court finds further guidance in a five-factor test that Arizona courts have developed for assessing whether punitive damages are appropriate. These factors are:

"(1) the reprehensibility of defendant's conduct and the severity of the harm likely to result, (2) any harm that has occurred, (3) the duration of the misconduct, (4) the defendant's awareness of the harm or risk of harm, and (5) any concealment of it." *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518 (Ariz. Ct. App. 1995) (citing *Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 209 (Ariz. 1992)). A reasonable jury could conclude that four of these factors weigh in favor of an award of punitive damages. Harm had been occurring since Haney first miscalculated the benefits in 2012. Hasty's conscious misconduct (*i.e.*, her refusal to make retroactive payments) continued over ten months, an extended period of time. And Hasty was aware of this harm, as evidenced by her receipt of numerous e-mails from the Fendon firm. As for the last factor, there is evidence that Hasty attempted to conceal her misconduct. When Hasty's supervisor asked whether she had submitted a form to ICA regarding Haney's claim, Hasty said that she had done so in March of 2012. But the evidence shows that she did not submit this form until September of 2012. Doc. 106, ¶¶ 21-25; Doc. 111, ¶¶ 21-25. Because four of the factors may weigh in favor of punitive damages, summary judgment on this issue is inappropriate.

Defendants argue that several cases involving bad faith insurance claims and punitive damages show that such damages cannot be awarded here. The Court finds that these cases are not decisive. The cases establish that punitive damages are not merited where an insurer merely takes a groundless position and fails to investigate the adequacy of the position. *See, e.g.*, *Filasky*, 734 P.2d at 84; *Walter v. Simmons*, 818 P.2d 214, 225 (Ariz. Ct. App. 1991). Nor are they appropriate where an insurer strictly construes a policy in its own favor while knowing this might cause harm to an insured. *Linthicum*, 723 P.2d at 682. But if an insurer aggressively pursues a profit-based policy knowing that this might result in the denial of meritorious claims, or if an insurer consistently denies insurance claims despite having evidence showing the claims are meritorious, punitive damages might be merited. *See, e.g.*, *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 802 (Ariz. Ct. App. 2012); *Mendoza*, 213 P.3d at 308. Similarly, if

"there was a deliberate ignoring of the [insured's] rights and needs, then punitive damages might [be] awardable." *Linthicum*, 723 P.2d at 682. This case falls into the last category. As already noted, a reasonable jury could find that "there was a deliberate ignoring" of Haney's right to retroactive payments. *Id.*

Throughout their motion, Defendants also argue that the conduct of ACE, Sedgwick, and Hasty's supervisors was reasonable and not guided by an evil mind. They stress that Kimberly Workman, Hasty's supervisor, consistently tried to improve Hasty's performance. The conduct of Ms. Workman, however, is not at issue. Arizona law "allows punitive liability against a principal for the conduct of its agent without any showing of the principal's evil mind." *Hyatt Regency*, 907 P.2d at 516. "[P]unitive damages may be assessed against an insurer for the actions of its [employee] if those actions were taken in furtherance of the insurer's business and within the scope of the [employee's] agency." *Mendoza*, 213 P.3d at 305. Defendants do not argue that Hasty was not acting in furtherance of their business and within the scope of her employment. Thus, the reasonableness of Defendants' efforts to improve Hasty's performance does not absolve them of liability for punitive damages.

In their reply, Defendants argue that "[s]imply disregarding a substantial risk of injury . . . is insufficient to support a punitive damages claim. Plaintiff must also show that Ms. Hasty disregarded this substantial risk to serve her own interests." Doc. 110 at 6 (citing *Walter*, 818 P.2d at 225). The Court will not consider this argument for two reasons. First, the law is unclear as to whether Haney must show that Hasty acted "to serve her own interests." Although this language appears in *Walter* as well as *Bradshaw v. State Farm Mutual Automobile Insurance Company*, 758 P.2d 1313, 1324 (Ariz. 1988), it is absent from other Arizona cases involving insurance bad faith and punitive damages. *See, e.g.*, *Rawlings*, 726 P.2d at 577-79; *Nardelli*, 277 P.3d at 801; *Mendoza*, 213 P.3d at 307. Second, Defendants did not make this argument in their opening brief, and the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Finally, Defendants highlight language in *Rawlings* that conduct justifying punitive damages must be "aggravated, outrageous, malicious or fraudulent," or must involve "'some element of outrage similar to that usually found in crime.'" *Rawlings*, 726 P.2d at 578 (quoting Restatement (Second) of Torts § 908). But the *Rawlings* court also stated that "punitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur." *Id.* (citation omitted). As discussed, a jury could reasonably find that Hasty consciously disregarded a risk of harm to Haney. Furthermore, Hasty's deliberate ignoring of e-mails from Haney and orders from ICA, as well as Hasty's concealing of her misconduct from her supervisors, could be reasonably construed as "aggravated" or "outrageous" conduct.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 102) is **denied.** The Court will set a final pretrial conference by separate order.

Dated this 16th day of June, 2015.

_____
David G. Campbell
United States District Judge

- 9 -